# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YUKON-KUSKOKWIM HEALTH CORPORATION<br>528 Chief Eddie Hoffman Hwy<br>Bethel, AK 99559,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES OF AMERICA<br><br> and<br><br>RYAN ZINKE, Secretary<br>U.S. Department of the Interior<br>1849 C Street, NW<br>Washington, DC  20240<br><br> and<br><br>HEATHER WILSON, Secretary<br>U.S. Department of the Air Force<br>1670 Air Force Pentagon<br>Washington, DC  20330-1670,<br><br>    Defendants. | Case No. _____ |

## COMPLAINT

Plaintiff Yukon-Kuskokwim Health Corporation, by and through its attorneys, Sonosky, Chambers, Sachse, Miller & Monkman, LLP, complains and alleges as follows:

## NATURE OF THE ACTION

1. The Yukon-Kuskokwim Health Corporation (YKHC) seeks a writ of mandamus, or, in the alternative, injunctive relief to compel the United States and the Secretaries of the Interior and Air Force to comply with Public Law 102-497, 106 Stat. 3260 Sec. 13 (1992), a statute

requiring the United States to convey to YKHC certain buildings and lands located in Bethel, Alaska by December 30, 1993 (hereinafter the "subject lands").

2. The statute also required the Secretaries to conduct an environmental cleanup of the subject lands before transfer. Although a preliminary cleanup effort was conducted and the property was prepared to be transferred in 2001, the property was never adequately secured and trespassers caused a large fire that released further contaminants and severely damaged most of the usable buildings on the subject lands. Despite repeated requests by YKHC, the Defendants never resumed the environmental cleanup and consequently they never transferred the subject lands to YKHC.

3. Defendants' failure to conduct a sufficient environmental cleanup and to convey the subject lands to YKHC violates a nondiscretionary statutory duty. It is also a violation of the 1992 statute's specific provisions. YKHC brings this action to secure a writ of mandamus under the Mandamus Act, 28 U.S.C. § 1361, or, in the alternative, an injunction under the Administrative Procedures Act (APA), 5 U.S.C. § 702, directing Defendants to complete the cleanup and convey the subject lands to YKHC within one year of entry of a final judgment in this case.

## JURISDICTION

4. This Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1361, 1362, and 5 U.S.C. § 702.

## PARTIES

5. Plaintiff YKHC is a non-profit Alaska corporation with its headquarters situated in Bethel, Alaska. It is established, controlled and sanctioned by 58 federally-recognized Indian Tribes located in and around the confluence of the Yukon and Kuskokwim Rivers in southwest Alaska, known as the Yukon-Kuskokwim Delta. The area YKHC serves covers approximately

75,000 square miles. It is a roadless area roughly the size of South Dakota, and the overwhelming majority of its 30,000 inhabitants are Yupik Eskimo. YKHC administers a comprehensive health care delivery system which includes community clinics, subregional clinics, and a central regional hospital in Bethel that provides a wide array of inpatient and outpatient medical services, dental care, mental health counseling and treatment, and environmental health services. YKHC is a Tribe as that term is defined in the Indian Self-Determination and Education Assistance Act (ISDEAA), 25 U.S.C. §§ 5304(e); 5381(b).

6. Defendant Ryan Zinke is the Secretary of Interior. Secretary Zinke exercises authority delegated to him by Congress to carry out federal law. Under Public Law 102-497, §13, the Secretary has a nondiscretionary duty to perform environmental remediation and conveyance of the subject lands "on terms mutually agreed on between the Secretary . . . and the Corporation."

7. Defendant Heather Wilson is the Secretary of the Air Force. Secretary Wilson exercises authority delegated to her by Congress to carry out federal law. Under Public Law 102-497, §13(b), the Secretary has a nondiscretionary duty, in tandem with the Secretary of the Interior, to perform environmental remediation of the property.[1]

## FACTS AND GENERAL ALLEGATIONS

8. For decades, YKHC has contracted with the U.S. Indian Health Service (IHS) under the ISDEAA to operate various federal health care programs serving the 58 federally-recognized Tribes located within YKHC's service area. Since 1994, YKHC has been a co-signer of the Alaska Tribal Health Compact, an umbrella agreement authorized by 25 U.S.C. § 5384 of the Indian Self-Determination and Education Assistance Act. The Compact establishes the general terms under

---

[1] As used throughout this Complaint (and unless context commands otherwise), the terms "Defendants," "Secretaries," and "Interior and Air Force" are used interchangeably.

which YKHC operates federal health care programs on behalf of the United States. These programs include comprehensive health services, such as well-person, emergency, acute care, chronic care, and inpatient and outpatient services; preventive health, dental and mental health and behavioral health services; substance abuse counseling and treatment services; health promotion, disease prevention and health education services; home-care and community-based services; and environmental health services including sanitation, water and sewer-related services.

9. In carrying out the Compact, YKHC operates a 50-bed acute care hospital in Bethel, Alaska. The hospital was built in approximately 1980, and due to severe arctic weather conditions and growing patient demand the hospital has long been in need of renovation and expansion. In 2016, IHS approved YKHC's $300 million joint venture construction agreement, under which YKHC agreed to secure financing to renovate and massively expand the Bethel hospital and associated staff housing, while IHS agreed to provide annual funding to cover increased operational and staffing costs. The hospital expansion project was dedicated in April 2017, and is to be completed in stages with the last stage to be completed in 2021.

10. In 1992 Congress enacted a statute that commanded the Secretaries of the Interior and the Air Force to transfer to YKHC "the buildings of the former [U.S. Department of the Interior] Bureau of Indian Affairs Bethel Agency, Bethel, Alaska and lands necessary for the use of these buildings but not to exceed 27 acres . . . ." Pub. L. 102-497, § 13(a) (also referred to herein as the "subject lands"). *See* Exhibit A, attached hereto.

11. Assuming (as occurred) that the clean-up activities mandated in the statute were undertaken by the Secretaries, the statute mandated that the Secretaries convey the subject lands to YKHC prior to September 30, 1993. § 13(a).

12. Although no purchase price was required of YKHC, YKHC was required hold the United States harmless from any suit arising from asbestos contained in the buildings situated on the lands to be conveyed.  § 13(c).

13. The subject lands addressed in the 1992 Act had formerly been used by the U.S. Air Force.  The land was later transferred to the U.S. Department of the Interior, which used the lands as an administrative site for the Bureau of Indian Affairs (BIA), an agency of the Department of Interior.  At the time the 1992 Act was enacted, the BIA had relocated its offices, and the buildings on the subject lands remained vacant.

14. Prior to its departure from the subject lands, the BIA stored fuel on the property. When the BIA or one of its contractors tried to move the fuel off-site, a large spill occurred and contaminated the property.  Further inspection at that time revealed additional contaminants from the Air Force's and BIA's prior uses of the property.

15. Congress directed that, prior to conveyance of the subject lands the Secretary of the Interior and the Secretary of the Air Force were to share among themselves the cost of environmental remediation of the subject lands, and either to complete the work themselves or to provide a grant to YKHC to do so.  § 13(b).  No such grant to YKHC was ever made.

16. The Departments of the Interior and the Air Force failed to complete the cleanup within the time period set by the 1992 Act, and since then have continued to fail and refuse to undertake additional clean-up activities in conformity with the Act.  Today, oil, petroleum products and other contaminants remain in the ground as a result of Defendants' prior joint or several use or occupancy of the subject lands.

17. In August 2001, the Secretaries asserted they had completed the necessary cleanup and sent conveyance documents to YKHC to review.  This statement was inaccurate.

18. After the BIA relocated from the property, Defendants failed to maintain any surveillance of the property or to secure it in any meaningful manner. As a result, trespassers regularly entered the subject lands, used the buildings for parties, and vandalized them. As a consequence (and among other things), the buildings' exterior and interior were defaced, all the windows were broken, large generators were removed, wall studs were cut-out of walls, equipment and tools were removed, and garbage was dumped on the premises. Against YKHC's requests to Defendants, anyone who drove out to the subject lands had complete access to the buildings and their contents.

19. In late August 2001, shortly after the conveyance documents were sent to YKHC for review, a fire broke out in the main building, causing considerable damage to the building and further contaminating the property.

20. After the fire, Defendants failed to repair the building, to conduct any further environmental work on the property, or to secure what remained of the subject lands and buildings.

21. In 2002, then-Senator Frank Murkowski brought the parties together to obtain cleanup estimates in an effort to resolve this matter. After several meetings and engineering reports, Defendants developed an estimate. Despite the development of an estimate, Defendants never allocated any funding to perform the cleanup. As a result, since 1992 and continuing after 2002 to the present day, Defendants have failed to undertake any clean-up activities on the subject lands.

22. In July 2009, YKHC engaged with Interior regarding the transfer; YKHC's preferences regarding demolition, abatement and disposal; and potential future uses of the BIA site. Despite these renewed discussions, Defendants continued to fail to clean up the subject lands.

23. At no time since 1992 has any act of Congress prohibited Defendants from allocating funds sufficient to clean up the subject lands to meet the requirements set forth in the 1992 Act. At no time since 1992 has any act of Congress prohibited Defendants from conveying the subject lands to YKHC, other than the condition precedent of a clean-up as described in the 1992 Act itself.

24. On February 29, 2016, YKHC wrote to the Secretary of the Interior and the Secretary of the Air Force requesting that "cleanup [be] completed expeditiously and the land (or comparable substitute adjacent lands) [be] transferred to YKHC as contemplated in the existing Act of Congress without further delay."

25. On May 16, 2016, YKHC received a letter from the Principal Deputy Assistant Secretary of the Air Force asserting that the Air Force had completed its part of the clean-up before Interior sent conveyance papers to YKHC in August 2001. The Principal Deputy Assistant Secretary said he would now contact the Department of the Interior "to discuss the way forward and whether additional cleanup of 'hazardous substances' and 'hazardous wastes' . . . may be required."

26. Since May 2016, YKHC and its attorneys have had several discussions with the Air Force and Interior. Both agencies assert they have no funds to complete the required environmental remediation on the subject lands, nor to provide a grant to YKHC so YKHC can perform such work.

**FIRST CAUSE OF ACTION**
**(Writ of Mandamus)**

27. All previous allegations of law and fact set forth in this Complaint are incorporated herein by reference.

28.Pub. L. 102-497 confers upon YKHC the unconditional and nondiscretionary right to conveyance of the subject lands free of any environmental hazards that require remediation.

29.Under Pub. L. 102-497, Defendants had a clear, unconditional and nondiscretionary duty to complete an environmental cleanup of the subject lands and to transfer the subject lands to YKHC on or before September 30, 1993.

30.YKHC has no alternative adequate remedy for Defendants' failure to comply with this statutory mandate. Despite 15 years of subsequent informal discussions, Defendants have failed and refused to comply with their statutory obligations under the 1992 Act, and have made clear they have no intent to do so in the future. There is no administrative process available to YKHC to compel Defendants to take the actions mandated by law in the 1992 Act.

31.Equitable considerations including the length of delay, the time elapsed since the statutory deadline in September 1993, and the fact that failure to convey is now restricting YKHC's ability to provide housing for doctors and other health care professionals that will be hired to work in YKHC's expanded hospital all favor granting a writ of mandamus.

32.YKHC is entitled to a writ of mandamus to direct the Secretary of the Interior and Secretary of the Air Force to comply with Pub. L. 102-497.

## SECOND CAUSE OF ACTION
### (Administrative Procedures Act Violation of Pub. L. 102-497)

33.All previous allegations of law and fact set forth in this Complaint are incorporated herein by reference.

34.Defendants failed to convey the property to YKHC as required by the 1992 Act. Defendants' failure violates section 13(a) of Pub. L. 102-497.

35.Defendants have also failed to complete any "responses that are necessary under applicable Federal and State laws to protect human health and the environment with respect to any

hazardous substance or hazardous waste remaining on the property," or to provide YKHC with a grant to perform such responses. This independent failure violates section 13(b) of Pub. L. 102-497.

36.     YKHC is entitled to immediate injunctive relief under section 702 of the APA directing the Secretaries comply with Public Law 102-497.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yukon-Kuskokwim Health Corporation prays that this Court grant the following relief:

A.    A writ of mandamus directing the Secretary of the Interior and Secretary of the Air Force to undertake the clean-up and conveyance requirements set forth in Pub. L. 102-497; or, in the alternative,

B.    An immediate injunction compelling Defendants to convey the property in question to YKHC in the physical and environmental condition required by Public Law 102-497, within one year of entry of a final judgment in this case; or, in the alternative,

C.    An immediate injunction compelling Defendants within the same time period to obtain and transfer to YKHC property suitable for housing personnel of equal size and value to the lands and associated premises required to be transferred to YKHC by Pub. L. 102- 497;

D.    Costs and attorney's fees incurred in pursuing these claims; and

E.    Such other monetary, declaratory and equitable relief as this Court may find to be just and proper.

///

///

///

Respectfully submitted this 16th day of November 2017.

                        SONOSKY, CHAMBERS, SACHSE,
                          MILLER & MONKMAN, LLP

                        */s/ Lloyd B. Miller*
By: _____
                Lloyd B. Miller
                D.C. Bar No. 317131
                Alaska Bar No. 7906040
                Rebecca A. Patterson
                *pro hac vice pending*
                Alaska Bar. No. 1305028
                725 East Fireweed Lane, Suite 420
                Anchorage, AK 99503
                Telephone: (907) 258-6377
                Facsimile: (907) 272-8332
                lloyd@sonosky.net
                rebecca@sonosky.net

                Harry R. Sachse
                D.C. Bar No. 231522
                1425 K Street N.W., Suite 600
                Washington, D.C. 20005
                hsachse@sonosky.com

                *Attorneys for Plaintiff*