# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **YUKON-KUSKOKWIM HEALTH CORPORATION**, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 1:17-cv-002474-TSC |
| **UNITED STATES OF AMERICA**, *et al.* | )<br>) |
| Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff Yukon-Kuskokwim Health Corporation ("YKHC") brings this mandamus and Administrative Procedure Act ("APA") suit against Defendants United States of America, Ryan Zinke, Secretary of the U.S. Department of the Interior ("DOI"), and Heather Wilson, Secretary of the U.S. Department of the Air Force ("Air Force"). YKHC seeks to compel compliance with Public Law 102-497, which requires Defendants to convey a parcel of land to YKHC. (ECF No. 1 ("Compl.").) YKHC alleges that Defendants have unreasonably delayed cleaning up and conveying the land, violating their statutory obligation to do so by September 30, 1993.

Defendants move, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Complaint, or, in the alternative, for summary judgment under Rule 56. (ECF No. 11 ("Defs.' Br."); ECF No. 12 ("Def. Mot. for Summ. J.").) Upon consideration of the motions, the parties' briefs, and oral argument, and for the reasons set forth below, the court the court will DENY Defendants' motion to dismiss and their motion for summary judgment.

# I. BACKGROUND

YKHC is a non-profit corporation established by fifty-eight federally recognized Alaskan Indian Tribes. (Compl. ¶ 5.) It provides healthcare services to 30,000 people in a region encompassing 75,000 square miles, including through a 50-bed acute care hospital in Bethel, Alaska. (*Id.* ¶ 5, 9.) To address a housing problem facing the hospital in 1992, Congress enacted legislation requiring the DOI and the Air Force to transfer a parcel of land and the unused buildings on the land to YKHC. (Compl. ¶¶ 10 (citing Act of Oct. 24, 1992, Pub. L. No. 102-497, § 13(a), 106 stat. 3261), 13.) The statute also required the DOI and the Air Force to "complete" any necessary "environmental response . . . to protect human health and the environment with respect to any hazardous substance or hazardous waste remaining on the property" or to provide YKHC funding to do so. Pub. L. No. 102-497 § 13(b). Defendants were to complete their environmental response and convey the parcel YKHC before September 30, 1993. *Id.* § 13(a)-(b). Today—over 25 years later—YKHC alleges that neither the environmental remediation nor conveyance has occurred. (Compl. ¶ 26.)

The agencies first missed the September 30, 1993 deadline after failing to remediate a fuel leak from an on-site storage tank that seeped into the land. (Compl. ¶ 14.) They engaged in almost a decade of remediation efforts, including a site characterization, human health risk assessment, ecological risk assessment, and mitigation aimed at an on-site sewage lagoon. (ECF No. 15-1 ("Preliminary Assessment Report") at 23–24.) In 2000, despite the cleanup efforts, the land still had petroleum-contaminated soil from the 1993 oil spill. (ECF No. 11-2 ("Admin. Record") at 5.) Nevertheless, the Alaska Department of Environmental Conservation concluded the agencies had attempted sufficient remediation and categorized the parcel as "no further remedial action required." (Admin. Record at 2.)

Claiming they had completed environmental remediation, the DOI drafted conveyance documents and sent them to YKHC in August 2001. (Compl. ¶ 17.) But a fire that month halted the conveyance by causing more damage to the property and releasing asbestos, lead paint, and petroleum contaminants. (Compl. ¶ 19; ECF No. 11-4 ("Johnson Decl.") ¶ 4.) The next year, the parties discussed further cleanup efforts, but no funds were allocated to perform it. (Compl. ¶ 21.) Over the next fifteen years, the parties continued to discuss cleanup and conveyance, including multiple investigations of the land and facility and cost evaluations for demolition and site restoration. (Compl. ¶ 22, Johnson Decl. ¶ 8.) But sufficient funds were never allocated to complete the necessary remediation. (Compl. ¶ 21–22, *see* Johnson Decl. ¶¶ 6–8.)

Finally, in 2016, YKHC asked the DOI and the Air Force to complete the cleanup "expeditiously" and convey the land. (Compl. ¶ 24.) The Air Force responded that it had completed remediation in 2001. (*Id.* ¶ 25.) Since that time, the Defendants have maintained they lack funds to either complete the environmental remediation or to give YKHC the funds to do so. (*Id.* ¶ 26.)

On November 16, 2017, YKHC filed this suit, alleging the cleanup and conveyance were unreasonably delayed and seeking both mandamus and APA relief.

## II. LEGAL STANDARD

Federal courts are of limited jurisdiction and the limits are especially important in the agency review context, where "Congress is free to choose the court in which judicial review of agency decisions may occur." *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007)). The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994). Thus, plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

In evaluating a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). But the court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept [plaintiffs'] legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). A motion to dismiss under 12(b)(1) "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). And "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing, *inter alia*, *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Conversely, a motion to dismiss under Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* Plaintiffs' factual allegations need not be "detailed," but "the Federal Rules demand more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (quoting *Iqbal*, 556 U.S. at 678).

### III.  ANALYSIS

Defendants move to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), arguing that Plaintiff's claims are untimely.

The APA claim is governed by the six-year statute of limitations for suits against the United States. 28 U.S.C. § 2401(a). Controlling authority from this Circuit requires the court to treat § 2401(a) as a jurisdictional statute of limitations, *see, e.g.*, *P & V Enterprises. v. U.S. Army Corps of Engineers*, 516 F.3d 1021, 1026 (D.C. Cir. 2008), despite the Supreme Court's ruling in *United States v. Kai Fun Wong*, 135 S. Ct. 1625, 1632 (2015), that the neighboring provision, § 2401(b), did not provide a jurisdictional statute of limitations. *See Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 36 (D.D.C. 2018) (noting that because precedent treating § 2401(a) as jurisdictional has not been explicitly abrogated, the D.C. Circuit's holding remains binding).

The parties disagree on which statute of limitations governs the mandamus action arising under Public Law 102-497, which was enacted in 1992, and contains no statute of limitations itself. Defendants argue that the catch-all provision in 28 U.S.C. § 1658, providing a four-year limit for civil actions arising under an Act of Congress enacted after 1990, governs. (Defs. Br. at 8–9.) YKHC contends that § 1658 does not apply to actions against the United States because § 2401(a) provides the catch-all statute of limitations for all actions against the United States under statutes with no specific statute of limitations. (ECF No. 15 ("Pl. Br.") at 12.) The court, however, need not resolve this dispute because the parties conceded at argument that which

5

statute of limitations applies does not affect the ultimate question of whether this action is timely. (ECF No. 21 ("Hr'g Tr.") at 3:3–6; 16:15–16.)

Defendants contend that both the four- and six-year statutes of limitation have run because the agencies first violated their statutory obligation on October 1, 1993, when they failed to meet the deadline, and YKHC sued over twenty years later. (Defs. Br. at 10.) YKHC responds that, under the continuing violation doctrine, their claims are not time-barred. (Pl. Br. at 28.)

The D.C. Circuit explained the continuing violation doctrine in the context of unreasonably delayed agency action in *The Wilderness Soc. v. Norton*, 434 F.3d 584, 588 (D.C. Cir. 2006). The Circuit found that the lower court erred in dismissing an action as untimely under § 2401(a) because "[t]his court has repeatedly refused to hold that actions seeking relief under 5 U.S.C. § 706(1) to 'compel agency action unlawfully withheld or unreasonably delayed' are time-barred if initiated more than six years after an agency fails to meet a statutory deadline." 434 F.3d at 588 (citing *In re United Mine Workers of America Int'l Union*, 190 F.3d 545 (D.C. Cir. 1999); *see also In re Bluewater Network*, 234 F.3d 1305 (D.C. Cir. 2000)). The Court explained that because the plaintiff's allegations were not "about what the agency has done but rather about what the agency has yet to do," it was unlikely that the case was time-barred. 434 F.3d at 588. As Defendants note however, the Circuit then found that the plaintiff lacked standing and affirmed dismissal. *Id.*

In *Earle v. District of Columbia*, 707 F.3d 299, 307 (D.C. Cir. 2012), the D.C. Circuit noted that it has "occasionally recognized" an application of the continuing violation doctrine "if the text of the pertinent law imposes a continuing obligation to act or refrain from acting." The Court explained that where a statute "imposes a continuing obligation to act, a party can continue

to violate it until that obligation is satisfied and the statute of limitations will not begin to run until it does." *Id.* (citing *AKM LLC dba Volks Constructors v. Sec'y of Labor*, 675 F.3d 752, 763 (D.C. Cir. 2012) (Garland, J. concurring)). The Court ultimately found the plaintiff's claims failed for other reasons. *Id.*

Defendants argue that the continuing violation doctrine is equitable and therefore cannot overcome a jurisdictional statute of limitation like § 2401(a). (Defs. Br. at 12; ECF No. 18 ("Defs. Reply") at 4–5.) This contention, however, rests on a misunderstanding of the continuing violation doctrine, which does not equitably toll a statute of limitations but rather determines when a claim accrues. *Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 45 (D.D.C. 2013) (citing *Earle*, 707 F.3d at 306). As the court explained in *Appalachian Voices*, even if jurisdictional statutes of limitation preclude equitable doctrines, "the continuing violation doctrine nonetheless applies to determine when a claim accrues rather than to excuse the plaintiff's failure to bring a claim that has long-since accrued." 989 F. Supp. 2d 30, 45 (D.D.C. 2013) (citing *Earle*, 707 F.3d at 306; *McKinney v. U.S. Postal Serv.*, No. 11–631, 2013 WL 164283, at *3–4 (D.D.C. Jan. 16, 2013))); *but see Alaska Cmty. Action on Toxics v. EPA*, 943 F. Supp. 2d 96, 108 (D.D.C. 2013) (holding the jurisdictional nature of § 2401(a) prohibits application of the continuing violation doctrine). While other courts in this District have characterized the continuing violation doctrine as equitable, *see Alaska Community Action on Toxics*, 943 F. Supp. 2d at 108, the court finds that doing so is "incompatible with *Earle*'s discussion of the continuing violation doctrine as a rule governing claim accrual." *Appalachian Voices*, 989 F. Supp. 2d at 46. This court agrees with *Appalachian Voices* that construing the continuing violation doctrine to govern accrual "reconciles the reasoning of the Circuit's dicta with its precedent concerning the jurisdictional nature of § 2401(a)." *Id.* Therefore, the court

7

concludes that the jurisdictional nature of § 2401(a) does not bar application of the continuing violation doctrine here.

To apply the doctrine, the court must first determine whether Public Law 102-497, the statute Defendants allegedly violated, creates a continuing obligation, which is a "question of statutory construction." *Earle*, 707 F.3d at 307. Defendants argue that the law does not create a "continuing" obligation but a discrete one. **(**Hr'g Tr. at 24:8–16.) But the "continuing" nature of an obligation does not necessarily stem from statutory obligations that are repeated, but rather those that impose a "continuing obligation to act." *Earle*, 707 F.3d at 307.

Defendants had an unambiguous statutory deadline to complete the environmental remediation and conveyance by September 30, 1993. This is similar to the deadline in *In re Bluewater Network*, 234 F.3d 1305, 1314 (D.C. Cir. 2000), in which the Coast Guard had a statutory deadline of August 18, 1991, to promulgate certain regulations. *Id.* at 1307. It did not meet the deadline but did undertake a failed temporary rulemaking in 1997 that expired in 1999. *Id.* When plaintiffs challenged the Coast Guard's failure to promulgate a rule by the statutory deadline, the agency argued that the suit was untimely, and plaintiffs should have sued to challenge the temporary rulemaking. *Id.* at 1312. The D.C. Circuit disagreed. It found that because the Coast Guard still had not enacted the regulations, after the deadline passed the agency was still violating its statutory obligation. *Id.* at 1314. The Circuit noted that it was "faced with a clear statutory mandate, a deadline nine-years ignored, and an agency that has admitted its continuing recalcitrance." *Id.* at 1316. Likewise, Defendants here had a clear statutory mandate to clean up and convey the property by September 30, 1993; they ignored the deadline for over twenty-five years, and they concede that they have not fulfilled their statutory obligation. (Hr'g Tr. 13:11–15.) Thus, the court concludes that Public Law 102-497 imposes a

8

"continuing obligation to act" on Defendants such that they "continue to violate it until that obligation is satisfied." *Earle*, 707 F.3d at 307. Therefore, YKHC pleads a timely claim, and the court will deny Defendants' motion to dismiss. The court will also deny Defendants' alternative motion for summary judgment as premature.

## IV. CONCLUSION

Accordingly, the court will DENY Defendants' motion to dismiss and will DENY their motion for summary judgment.

Date: March 17, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge